*64 OPINION OF THE COURT
This litigation concerns appeals by the above-named Petitioners of the election results From the General Election of the Cherokee Nation held on the 24th day of May, 2003. This Court has original jurisdiction pursuant to Article VII of the Constitution of the Cherokee Nation and Title 2(> C.NCA (LA 7-97) § 101, el seq. The Petitions have been consolidated without objection by previous Order of this Court for the purposes of the appeal.
A recount of the election results was held on May 30, 2003, under supervision of this Court and all Petitioners have timely appealed the election results. During this litigation, the Court required the counting of thirty (30) additional ballots which had previously been rejected by the Commission. The results which follow reflect adjustment for both the May 30, 2003 recount and the recount of the 30 ballots ordered by this Court.
Petitioners Joe Byrd, Robin Carter Mayes and L.S. Fields appeal from the results in the race for Principal Chief in which the preliminary results after recounts were:
Chad “Corntassel” Smith 7303 52.37%
Joe Byrd 5457 39.14
Robin Carter Mayes 215 1.54
L.S. Fields 969 6.95
13,944
Petitioner Hastings Shade appeals from the results in the race for Deputy Principal Chief, in which the preliminary results after recounts were:
Joe Grayson, Jr. 5205 37.84%
Gary D. Chapman 4540 33.01
Hastings Shade 3256 23.67
John Cornsilk 754 5.48
Petitioner Don Crittenden appeals from the results in the race for Council Member, District 1, in which the preliminary results after recounts were:
Bill John Baker 825 14.38%
Audra Smoke-Connor 802 13.98
Barbara Dawes Martens 744 12.97
Ricky D. Gassaway 733 12.78
Don “Chief’ Crittenden 561 9.78
Harley L. Terrell 473 8.25
Freddie Ferrell, Jr. 302 5.26
Billy Heath 287 5.00
Roger Barr 277 4,83
Teresa Tackett 274 4.78
Brian R. Berry 259 4.51
Ron Qualls 96 1.67
Art Floyd 73 1.27
Billy R. McCoy 31 .54
appeals Council prelimi-Petitioner Mary Flute-Cooksey from the results in the race for Member, District 3, in which the nary results after recount were:
21.92% Phyllis Yargee 576
21.84 David W. Thornton, Sr. 574
20.47 Sam Ed Bush, Jr. 538
18.00 Edith Locust Dalton 473
17.77 Mary Flute Cooksey 467
Petitioner Stephanie Wiekliffe Shepherd appeals from the results in the race for Council Member, District 6, in which the preliminary results after recount were:
Meredith A. Frailey 353 21.87%
Johnny Keener 341 21.13
Stephanie Wycliffe Shepherd 313 19.39
David J. Standingwater 229 14.19
Robert Backward 197 12.21
Shorty Cooper 181 6.81
Hearing began on the 10th day of June, 2003. The Petitioners announced “rest” on Friday, June 13, 2003, whereupon the Respondent interposed a demurrer to the evidence and moved for dismissal. The Court took the said motion under advisement and, on June 16,2003, verbally announced the unanimous decision of the Court with regard to the Demurrer. The written detail of that decision is as follows:
The Petitioners raise ten (10) separate causes of action alleging irregularities and violations of the election laws of the Cherokee Nation. In considering a demurrer to the evidence, this Court must consider the evidence in its best light as regards the Petitioners. As to each cause of action, the Petitioners must prove beyond a reasonable doubt substantial viola *65 tion(s) of election laws or Commission procedures in effect at the time of the election and, that said violation(s) affected or had a strong likelihood of affecting the election outcome.[1] The Council has imposed the burden of supporting allegations in election appeals “beyond a reasonable doubt”. This is the highest burden found in our system of jurisprudence. It is the same burden applied when we deprive citizens of life and liberty and this Court must sustain the motion to dismiss unless evidence has been presented which convinces this Court of both the violations of law and the substantial likelihood of affecting the election outcome beyond a reasonable doubt.
First Cause of Action—Voter Lists. The Petitioners allege that certain lists were obtained from the Election Commission office containing prohibited information and disseminated to a “slate” of candidates aligned with candidate Smith in violation of Title 26 CNCA, § 25(C), creating an “unfair playing field” in the campaign. The Court heard testimony regarding the dissemination of lists at strategy meetings for Smith’s slate of candidates and received copies of such lists into evidence. However, the testimony of election officials and Automated Election Services (hereinafter AES) personnel showed no correlation in format or data (particularly a “voter ill” column on the lists) to any corresponding information kept or assigned by either entity. We FIND that the Petitioners have not sustained the burden of showing a violation of election laws by the production and dissemination of these lists and accordingly, the Respondents’ Motion to Dismiss is GRANTED, as to this cause of action.
Second Cause of Action—22 More Absentee Ballots than Corresponding Return Envelopes. The Petitioners allege that in the recount proceedings on May 30, 2003, it was discovered that there were 22 more counted absentee ballots than there were return envelopes. The Court was aware of this discrepancy because the Court required the recount of all opened return envelopes at the recount proceedings. At that time, Commissioner Haskins expressed doubt as to the accuracy of that count. However, we FIND for the purposes of consideration of the Motion to Dismiss that the Petitioners have met the burden of showing a violation of Title 26 CNCA § 77, beyond a reasonable doubt and that all petitioners will be given the benefit of these questioned ballots in our analysis.
Third Cause of Action—Oologah District Voters allowed to Register and Vote on Election Day. Petitioners allege that unregistered voters were allowed to register and vote on election day at an Oologah District precinct in violation of Title 26 CNCA, § 21. The Court heard testimony from Scott Sanders who was acting as Sergeant at Arms at the Oologah precinct. He observed a number of people, possibly 12, who were allowed to fill out voter registration forms and cast a ballot on election day, May 24, 2003. He also testified that the ballots were placed in envelopes. Election Commission witnesses expressed belief that these were “challenged ballots”. The Court FINDS that the observed conduct is consistent with the challenged ballot procedure of Title 26 CNCA, § 64 and that the Petitioners have failed to meet the burden of showing a violation of election laws beyond a reasonable doubt. Accordingly, as to this cause of action, the Respondent’s Motion to Dismiss is GRANTED.
Fourth Cause of Action—Keys and Cherokee precinct officials did not re *66 quire voter identification. The Petitioners allege, that precinct workers did not require voters to show identification before voting in violation of Title 26 CNCA, §12(0(1). The Court received testimony of voters, one a sitting council member, who were not asked for identification prior to voting and the opinion of those voters that the precinct workers did not know the voter. A registered voter may vote by appearing at the precinct, announcing his or her name and address to the precinct official, signing the registry, marking a ballot and placing it in the ballot box.[2] The witnesses who testified conducted themselves in accordance with the law. As to precinct workers, pursuant to § 12(C)(1), they must establish the identity of each voter by personal knowledge or photo ill prior to allowing the voter to cast a ballot. No evidence was received that precinct workers did not have personal knowledge of the voter’s identity. The Court FINDS that the Petitioners have not shown beyond a reasonable doubt a violation of election laws with regard to this cause of action and, accordingly, the Respondent’s Motion to Dismiss is GRANTED.
 Fifth Cause of Action—Ballot Box from Muldrow Precinct was Opened. The Petitioners allege that a ballot box from Muldrow was opened outside the Election Commission Headquarters on election - night violating Title 26 CNCA, § 93(C). The witness was detailed in her testimony and observations that a box was unsealed outside the Election Commission office. The AES representative testified that the ballot machines tally votes at the precincts and the boxes are then removed from the machine, sealed and delivered to the Election Commission office. Mr. Rai-ney testified that the sealing tape was tamper proof and that no ballot boxes were received with broken seals although one was improperly sealed. Even if we give the benefit of the doubt to the Petitioners’ witness, there is no likelihood that the observed conduct would have affected the election since the tally was taken from the machine at the precinct independent of the ballot removal and delivery to the Election Commission office. The Court FINDS that the Petitioners have not supported this allegation beyond a reasonable doubt and, accordingly, the Respondent’s Motion to Dismiss is GRANTED.
Sixth Cause of Action—Precinct Officials at Sallisaw and Pryor Turned Away Voters. The Petitioners allege a violation of Title 26, § 12 because voters were not allowed to vote without “Red Cards” when under the law, only a picture ill was required. We find that from the evidence and testimony presented, a substantial violation of the applicable law has been shown beyond a reasonable doubt and that 2 votes which are identifiable by District will be considered by the Court in its analysis as to national and district candidates.
Seventh Cause of Action—Types of Marking Devices on Absentee Ballots. The Petitioners allege that absentee ballots marked with blue ink were not counted by the machines and that the requirement of specific types of marking derices violates Title 26 CNCA, § 78. This Court required the hand counting of all absentee ballots at the recount conducted on May 30, 2003. This process eliminates any doubt as to the reliability of the machine counting because of marking devices. Accordingly, the Respondent’s Motion to Dismiss is GRANTED as to this cause of action.
*67 Eighth Cause of Action—Drops in Registration and California Absentee Requests since 1999. The Petitioners request an investigation or explanation of why there are 4000 less voters registered in 2003 compared to 1999 and why the California requests for absentee ballots have dropped from 1700 to 500. They cite no specific violation of law. We FIND that evidence was received supporting the drop in registration but no evidenced supported the California claim. Further, no violation of election law has been alleged or shown and, accordingly, the Respondent’s Motion is GRANTED as to this cause of action.
Ninth Cause of Action—Absentee Irregularities. This allegation suggests absentee ballot irregularities and was drafted before the parties had the opportunity for discovery and examination of evidence. In fairness, and because of the accelerated hearing procedures required by law, the Petitioners were allowed to present evidence on this issue. Further, the Court, on its own motion has requested and received exhibits on this question. The evidence and our examination have shown several problem areas with absentee ballots.
First, for the purposes of our analysis and ruling on the Motion to Dismiss, we take judicial notice of the discrepancy of twenty-two (22) absentee ballots as discussed in the second cause of action above. These questioned ballots will be credited to both national and district candidates in our analysis. Each district Petitioner will be credited because we cannot determine the number of such ballots attributed to each district.
Second, Eleven (11) precinct workers were allowed to vote absentee early on May 3, 2003, as an accommodation because they would be working in pre-^ cinets other than their own on election day. Although this was a reasonable accommodation allowed by the Election Commission, it is not specifically authorized by Title 26 and is therefore a violation of election laws. These votes are attributed to specific districts and will be credited to both Petitioners in the national races and the applicable district races.
Third, five (5) persons were allowed to vote absentee on May 23rd and 24th. Two voted on the 23rd and were precinct workers whose voting districts were determined. Three voted on the 24th who were not precinct workers, but whose voting districts have been determined. These voters were allowed to vote as an accommodation but such voting is not authorized by law and is a violation of Title 26 of our Code. Each national candidate will be credited with these 5 votes in our analysis and they mil be credited to the appropriate district candidates.
Fourth, Fifty-Two (52) replacement ballots were requested by voters who had made an initial request. These ballots were not authorized by law and violate Title 26 CNCA, § 73(C) beyond a reasonable doubt. Based upon an initial list provided to the Court, each national candidate will be credited with these ballots and each district candidate will be given credit for the appropriate number of these ballots by district in our analysis.
Fifth, Thirty (30) opened and empty secret envelopes were found a counted box of return envelopes. When the absentee voter returns the absentee ballot, it is returned inside a sealed secrecy envelope identified by district on the outside. This secrecy envelope in inside a sealed return envelope with a sworn and notarized affidavit printed on the outside and a district identifier. There has been no explanation of how the opened secrecy *68 envelopes got in the counted box. Taking the evidence in its best light in favor of the Petitioners, we FIND that these are questioned ballots as a result of an irregularity violating Title 26 of our Code. Accordingly, each national candidate will be credited with these votes in our analysis and, since these ballots are attributable to district, each district Petitioner will be given appropriate credit.
Sixth, two (2) absentee contested opened envelopes were found in a “counted” return envelope box. This would appear to be an irregularity and for the purposes of analysis, the ballots represented by these envelopes will be credited to each national and district Petitioner.
Seventh, The Court, in examining the return envelopes, found seven (7) that had contained ballots that were counted. These envelopes contained defective notaries as a matter of law and the ballots should not have been counted. These questioned ballots will be credited to each national Petitioner and appropriate district Petitioners in our analysis.
Tenth Cause of Action—A Kee-toowah member voted in the Cherokee Election after Relinquishing Cherokee membership. The Petitioners allege that a Keetoowah member voted in the Cherokee election after relinquishing her Cherokee membership. This allegation was supported by the said Keetoowah member. For the purposes of the Motion to Dismiss, the Court FINDS that the Petitioners have shown beyond a reasonable doubt, a violation of Cherokee election law and, accordingly, each national Petitioner will be given credit for this vote as will the appropriate district Petitioner.
We FIND that there are One Hundred Thirty (130) questioned ballots due to irregularities for the purposes of our analysis in ruling on the Respondent’s Motion to Dismiss. We first turn to the national races. In the Principal Chief election, after the ordered recounts, there were 13,944 ballots east. The number required to avoid a runoff would be 6,973 (50% +- 1 vote). Candidate Smith received 7,303 votes exceeding the runoff minimum by 330 votes. If we subtract the questioned ballots from the total for Smith and credit them to the closest opponent, candidate Byrd, Smith’s 7173 would still exceed the number required to win without a runoff Our analysis leads us to conclude and FIND that the Petitioner has not met the burden of showing beyond a reasonable doubt that the violations shown affected the outcome of this race. Accordingly, the Respondent’s Motion to Dismiss is GRANTED as to Petitioners Joe Byrd, Robin Carter Mayes and L.S. Fields,
In the race for Deputy Principal Chief, initial results have placed candidates Grayson, Jr. and Chapman in a runoff Candidate Chapman who drew the second most votes, received 4,540 votes. Candidate Shade received 3,256 votes. If we take away the 130 questioned ballots from Chapman and credit them to Shade, the Petitioner would be 1,025 votes short of finishing in second place. Our analysis leads us to conclude and FIND that the Petitioner has not met the burden of showing beyond a reasonable doubt that the violations shown affected the outcome of this race. Accordingly, the Respondent’s Motion to Dismiss is GRANTED as to Petitioner Hastings Shade.
In the district faces challenged by Petitioners, we FIND that races are so close after crediting the appropriate questioned ballots to the respective Petitioners, that the Petitioners have shown at this stage of the litigation, a likelihood that the outcome of the election could be affected by the violations shown and have shifted the burden of going forward to the Respondents. *69 IT IS ORDERED that the Respondent’s Motion to Dismiss, as to the Petitioners Crittenden, FluteCooksey and Wickliffe Shepherd are DENIED.
On June 17, 2003, the Court proceeded to hear the evidence of the Respondent on the remaining issues, whereupon, at the conclusion of all the evidence, both parties announce final “rest”. The Court took the matter under consideration and after deliberation, announced its decision in open Court. The following is the written opinion of the majority of the Court consistent with the verbal announcement given:
Because of the possibility of error in the count of the twenty-two (22) counted absentee ballots exceeding the number of return envelopes, the Court re-examined the envelopes and concluded that the number of ballots exceeded envelopes by five (5). Further, through testimony, we were shown that less that the fifty-two (52) requested replacement ballots were actually returned. After consideration of all of the Respondent’s evidence and revising the numbers of questioned ballots, a majority of the Court applied the following analysis to the district races:
[[Image here]]
Each of the districts above elected two (2) Council Members. The margins of victory are determined as the difference between the total for winner receiving the lowest number of votes and the closest candidate. In each race, if we apply the most liberal mathematical analysis in favor of the respective district Petitioners which is to subtract the questioned ballots from the winner receiving the lowest number of votes, and credit them to the third place candidate, the outcome of the election is not affected by the analysis. While this is a very close question, the Court finds that the Petitioners, and each of them have not met the high burden of showing beyond a reasonable doubt, that the that there is a strong likelihood that the outcome of the election in each of these districts would be affected by the irregularities and violations shown. Accordingly, the relief requested by these Petitioners in their Prayers for relief is denied. The Election Commission is- directed to certify the results of the election as announced in open Court including all races affected by the recount Ordered by this Court during the litigation. A final vote count as to all races is attached to this Order as Exhibit “A”
Finally, in this litigation, no allegations were made of any fraudulent conduct nor was there any suggestion of such. These Justices join Justice Leeds in the final paragraph of her separate opinion in commending the hard work and professionalism of the Election Commission, their staff and AES in the conduct of the election and we join in recommending Council action as appropriate in areas of need as reflected in these Opinions.
FOR THE MAJORITY: DARRELL DOWTY, Chief Justice, DARELL R. MATLOCK, Justice.
Justice STACY L. LEEDS, Concurs in Part/Dissents in Part By Separate Opinion.

. Title 26 CNCA, § 102(C)

. Title 26 CNCA, § 62(B)